# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOES 151-166, | Case No. 2:20-cv-03817-MHW-EPD |
| Plaintiffs, | Judge Michael H. Watson |
| v. | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | |
| Defendant. | |

## DEFENDANT THE OHIO STATE UNIVERSITY'S
## MOTION TO DISMISS PLAINTIFF JOHN DOE 162'S
## <u>FIRST AMENDED COMPLAINT</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant The Ohio State University hereby moves this Court to dismiss all claims asserted in the First Amended Complaint (Doc. 28) by plaintiff John Doe 162—the sole remaining plaintiff in the above-captioned action.  The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support.

                                          DAVID A. YOST
                                          ATTORNEY GENERAL OF OHIO

By:   <u>/s/ Michael H. Carpenter</u>
        Michael H. Carpenter (0015733) (Trial Attorney)
        Timothy R. Bricker (0061872)
        David J. Barthel (0079307)
        CARPENTER LIPPS AND LELAND LLP
        280 Plaza, Suite 1300
        280 North High Street
        Columbus, OH 43215
        E-mail: carpenter@carpenterlipps.com
                     bricker@carpenterlipps.com
                     barthel@carpenterlipps.com

        Special Counsel for Defendant
        The Ohio State University

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION.**

The Ohio State University ("Ohio State") has condemned the conduct of former Ohio State physician Dr. Richard Strauss and the university's failure at the time to prevent the abuse, and has expressed its regret and sincere apologies to each person who endured Strauss' abuse, including plaintiff John Doe 162. The instant motion to dismiss is ***not*** directed toward John Doe 162's claims of injury. Rather, while respectful of John Doe 162 and his claimed injuries, Ohio State maintains that John Doe 162's proffered legal cause of action is ***legally*** deficient on its face and should be dismissed on two independent grounds.

First, John Doe 162 lacks standing to assert a Title IX claim against Ohio State. John Doe 162 alleges he attended Ohio State's campus for a recruiting visit as a prospective athlete for Ohio State's wrestling team while he was a high school student. He is suing Ohio State related to the alleged conduct of Strauss during one medical exam which occurred during the visit. John Doe 162 admits he was neither a student nor an employee of the university at the time of the alleged abuse. His Title IX claim should be dismissed for lack of standing.

Second, without exception, every civil legal claim is subject to a statute of limitations, *i.e.*, a defined time period within which a civil claim must be brought or else be barred. The Supreme Court of the United States has observed that statutes of limitations are "vital to the welfare of society"; are "found and approved in all systems of enlightened jurisprudence"; and "promote repose by giving security and stability to human affairs." *Wood v. Carpenter*, 101 U.S. 135, 139 (1879). The Supreme Court has explained that a statute of limitations is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.

1

The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Based on these policies, courts across the country have consistently dismissed Title IX claims alleging sexual misconduct that occurred decades ago.

The statute of limitations for John Doe 162's Title IX claim is two years. Although John Doe 162 does not allege the date(s) he visited Ohio State or when the examination occurred, he asserts that Strauss was employed by Ohio State from September 1978 until 1998—23 to 43 years ago. John Doe 162 did not assert his Title IX claim against Ohio State until July 29, 2020. The two-year limitations period expired long ago, and John Doe 162's Title IX claim should be dismissed.

In filing this motion to dismiss, Ohio State is not ignoring or being dismissive of John Doe 162's factual allegations. But standing and statutes of limitations are critical attributes of our system of laws. Here, plaintiff John Doe 162's Title IX claim is legally barred.

**II.      PROCEDURAL HISTORY AND JOHN DOE 162's ALLEGATIONS.**

The above-captioned action is one of 32 separate actions that were filed against Ohio State relating to the conduct of former Ohio State physician Dr. Richard Strauss. Despite the time-barred nature of all plaintiffs' claims, Ohio State has attempted to do the right thing.

On July 29, 2020, the sixteen plaintiffs in the above-captioned action, including plaintiff John Doe 162, filed their original Complaint against Ohio State asserting Title IX claims for "heightened risk" (Count I) and "hostile environment" (Count II). *See* Complaint (Doc. 1).

On October 12, 2020, Ohio State and fifteen of the sixteen plaintiffs in the above-captioned action, settled their claims. *See* Order (Doc. 21). The claims of plaintiff John Doe 162

were not included in the October 12, 2020 settlement. *Id*.

On May 24, 2021, Ohio State filed its motion to dismiss John Doe 162's original Complaint, which asserted two Title IX claims for "heightened risk" (Count I) and "hostile environment" (Count II) related to alleged conduct of Strauss during a medical exam occurring sometime between 1978 and 1998 when Strauss was employed by Ohio State. *See* Motion to Dismiss (Doc. 26). John Doe 162 did not allege he was an Ohio State student or employee at the time of the alleged abuse. Ohio State's motion to dismiss sought dismissal on two independent grounds: (1) John Doe 162 lacked Title IX standing; and (2) John Doe 162's Title IX claims were barred by the two-year statute of limitations. *See* Motion to Dismiss (Doc. 26).

In response to Ohio State's motion to dismiss, John Doe 162 filed a First Amended Complaint ("FAC") on June 14, 2021. *See* FAC (Doc. 28). The FAC deletes the Title IX "hostile environment" claim, leaving the Title IX "heightened risk" claim as the sole remaining claim.

In his FAC, John Doe 162 alleges he visited "Ohio State's campus for a recruiting visit as a prospective athlete for their wrestling team" while he was a high school student. *Id*. at ¶ 72. Strauss is alleged to have sexually assaulted or abused John Doe 162 while Strauss treated him one time during this visit. *Id*. at ¶ 78. The FAC also confirms that John Doe 162 never applied to or attended Ohio State as a student or student-athlete. *Id*. ¶ 67.

Although John Doe 162 does not allege the date(s) he visited Ohio State or when the examination occurred, he asserts that Strauss was employed by Ohio State from September 1978 until March 1, 1998. *Id*. at ¶¶ 82, 85. Strauss died in 2005. Thus, John Doe 162's Title IX claim is based on acts alleged to have been committed 23 to 43 years ago, by someone who ceased being employed at Ohio State 23 years ago, and who died 16 years ago.

3

**III.     FED. R. CIV. P. 12(b)(6) STANDARD.**

A complaint is subject to dismissal under Rule 12(b)(6) if, on its face, the allegations, taken as true, show the plaintiff is not entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege sufficient facts to state a claim that is "plausible on its face." *Arocho v. Ohio Univ.*, 469 F. Supp. 3d 795, 798 (S.D. Ohio 2020), *reconsideration denied*, No. 2:19-CV-4766, 2020 WL 6949098 (S.D. Ohio Oct. 28, 2020) (Watson, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Importantly, whether a complaint satisfies the *Iqbal*/*Twombly* plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 550 U.S. at 679. In doing so, the Court "need not accept conclusory allegations or indulge in unreasonable inferences." *HMS Prop. Mgmt. Grp., Inc. v. Miller*, 69 F.3d 537, at *3 (6th Cir. 1995); *see also* Wright & Miller, Motions to Dismiss—Practice Under Rule 12(b)(6), 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) (courts need not accept "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "mere conclusory statements," or "sweeping legal conclusions cast in the form of factual allegations.").

Further, "[i]f the allegations . . . show that relief is barred by the applicable statute of limitation[s], the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007). Dismissal under Fed. R. 12(b)(6) is proper "if it is apparent from the face of the Complaint" that the statute of limitations has run. *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992). *See also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (affirming dismissal based on statute of limitations bar where "the allegations in the complaint affirmatively show that the claim is time-barred"); *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio

2008) ("[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense."); *Arandell Corp. v. Am. Elec. Power Co.*, No. 2:09-CV-231, 2010 WL 3667004, at *4, *8 (S.D. Ohio Sept. 15, 2010) (Watson, J.) (dismissing based on statute of limitations) (citing *Hoover*, 958 F.2d at 744).

### IV.    PLAINTIFF JOHN DOE 162 LACKS STANDING TO STATE TITLE IX CLAIMS AGAINST OHIO STATE.

Plaintiff John Doe 162 lacks standing to assert Title IX claims against Ohio State because he was neither an Ohio State student nor an Ohio State employee at the time of the alleged abuse. Title IX provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

"Though cast in broad terms, § 1681 nevertheless addresses itself only to sex discrimination against the participants in and the beneficiaries of federally assisted education programs. Section 1681 must therefore be read to protect from sex discrimination only those persons for whom the federally assisted education programs are established[.]" *Romeo Cmty. Sch. v. U.S. Dep't of Health, Ed., & Welfare*, 438 F. Supp. 1021, 1031 (E.D. Mich. 1977), *aff'd*, 600 F.2d 581 (6th Cir. 1979). Accordingly, only students or employees of the institutions they are suing have standing to sue under Title IX. *See Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 650–51 (1999) (students); *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 530 (1982) (school employees).

"There are no cases that have been decided to date that extend Title IX protections to campus visitors." Hannah Brenner, *A Title IX Conundrum: Are Campus Visitors Protected from*

5

*Sexual Assault?*, 104 Iowa L. Rev. 93, 135 (2018) (collecting cases). Non-students and non-employees lack Title IX standing because they have not been "excluded from participation in," "denied the benefits of," or "subjected to discrimination under any education program or activity." 20 U.S.C. § 1681(a). Based on Title IX's plain language, courts—including this court and the Sixth Circuit—consistently hold that non-students and non-employees lack standing to bring Title IX claims. *See Arocho v. Ohio Univ.*, No. 2:19-CV-4766, 2020 WL 3469223, at *4 (S.D. Ohio June 25, 2020) (Watson, J.) (following cases holding that potential athletic recruits, potential students, and students of other schools who were assaulted on the defendant university's campus lacked standing to bring Title IX claims; granting motion to dismiss Title IX claims brought by a high school student who was assaulted by a university employee during the student's participation in university's "career day" for lack of standing); *see also Doe v. Univ. of Kentucky*, 971 F.3d 553, 559 n.4 (6th Cir. 2020) (stating "we do not expand [Title IX] standing beyond those circumstances where a plaintiff is so closely tied to a university that the individual is essentially a student of that university.").[1]

Plaintiff John Doe 162 does not allege he was a student or employee at Ohio State at the

---

[1] *See also Phillips v. Anderson Cty. Bd. of Educ.*, 259 F. App'x 842, 843 n.1 (6th Cir. 2008) (parents of students lacked standing to assert Title IX claims); *Arora v. Daniels*, No. 3:17-CV-134, 2018 WL 1597705, at *8 (W.D.N.C. Apr. 2, 2018) ("potential student" who was harassed "[b]efore she sought admission" at the college lacked Title IX standing); *Doe v. Brown Univ.*, 270 F. Supp. 3d 556, 561-563 (D.R.I. 2017) (student enrolled at Providence College who was assaulted at Brown University could not bring Title IX claim against Brown University because she was not a student at Brown), *aff'd*, 896 F.3d 127 (1st Cir. 2018); *K. T. v. Culver-Stockton Coll.*, No. 4:16-CV-165 CAS, 2016 WL 4243965, at *4-6 (E.D. Mo. Aug. 11, 2016) (high school student who visited college as a potential soccer recruit and was assaulted could not bring a Title IX claim against the college because she was not within the scope of persons Congress intended Title IX to protect), *aff'd*, 865 F.3d 1054 (8th Cir. 2017); *Borkowski v. Baltimore Cty., Maryland*, No. CV DKC 18-2809, 2020 WL 5816369, at *22-23 (D. Md. Sept. 30, 2020) (dismissing for lack of standing Title IX claims brought by former students of the University of Maryland Baltimore County ("UMBC") against UMBC arising from sexual assaults by members of UMBC's basketball team because plaintiffs were students at Towson University, not students of UMBC, at the time of the assaults); *Yan Yan v. Pennsylvania State Univ.*, No. 4:14-CV-01373, 2015 WL 3953205, at *13 (M.D. Pa. June 29, 2015) (former student lacked standing to assert Title IX discrimination and retaliation claims for conduct that occurred when she was no longer a student), *aff'd*, 623 F. App'x 581 (3d Cir. 2015); *Glaser v. Upright Citizens Brigade LLC*, No. 18-CV-971 (JPO), 2020 WL 1529309, at *4-5 (S.D.N.Y. Mar. 31, 2020) (same).

time of the alleged abuse.  In fact, he specifically admits he never applied to or attended Ohio State as a student or student-athlete.  FAC (Doc. 28) at ¶ 67.  John Doe 162 alleges Strauss abused him when John Doe 162 was a high school student visiting Ohio State's campus on a recruiting visit as a prospective athlete.  *Id*. at ¶¶ 72, 78.  Therefore, non-Ohio State student John Doe 162 lacks standing to assert his Title IX claim against Ohio State.  His Title IX claim should be dismissed.

V. **PLAINTIFF JOHN DOE 162's TITLE IX CLAIM IS BARRED BY THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS.**

As discussed above, plaintiff John Doe 162 lacks standing to state a Title IX claim against Ohio State.  In addition to lack of standing, John Doe 162's Title IX claim is barred as a matter of law by the expiration of the statute of limitations.

Title IX does not provide a statute of limitations.  *See Lillard v. Shelby Cty. Bd. of Educ*., 76 F.3d 716, 728-729 (6th Cir. 1996) ("Neither Title VI nor Title IX provide a limitation period expressly pertaining to judicial proceedings, a failure occasioned, no doubt, by the fact that, for both statutes, private causes of action were implied by the courts").  When a federal statute, such as Title IX, does not provide a statute of limitations, courts "borrow[] . . . the state law of limitations governing an analogous cause of action."  *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 483–84 (1980).  Accordingly, courts apply "state personal injury limitation periods to Title IX" claims.  *Lillard*, 76 F.3d at 729; *accord King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) (collecting cases).  In Ohio, the statute of limitations for personal injury is two (2) years.  *See* OHIO REV. CODE § 2305.10(A).  Thus, the statute of limitations applicable to plaintiffs' Title IX claims is two years.  *See Lillard*, 76 F.3d at 729; *Giffin v. Case W. Reserve Univ*., No. 98-3267, 1999 WL 238669 at *1-2 (6th Cir. Apr. 13, 1999).

7

Even though Title IX borrows Ohio's personal injury statute of limitations, federal law determines when a Title IX claim accrues. *King-White*, 803 F.3d at 762; *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006); *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F.Supp.2d 662, 668 (E.D. Ky. 2009). The "standard rule" is that accrual occurs—and the limitations period begins to run—"when the plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Significantly, neither the United States Supreme Court nor the Sixth Circuit has held that the discovery rule applies to claim accrual under Title IX. In fact, more recently, the United States Supreme Court has warned that courts should not apply the discovery rule to delay the accrual of a claim brought pursuant to a federal statute unless the statute specifically mandates it. *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (characterizing the discovery rule as a "bad wine of recent vintage" and rejecting an "expansive approach to the discovery rule" because courts should not "enlarge[]" federal statutes). The *Rotkiske* Court explained that courts should not "read in" the discovery rule to federal statutes because "Congress has shown that it knows how to adopt" the discovery rule if it chooses to do so, as evidenced by Congress's "enact[ment] [of] statutes that expressly include [] language . . . setting limitations periods to run from the date on which the violation occurs *or the date of discovery of such violation*." *Rotkiske*, *id*. at 361 (citing numerous statutes). The Sixth Circuit has followed *Rotkiske*'s lead. S*ee Everly v. Everly*, 958 F.3d 442, 460-461 (6th Cir. 2020) (Murphy, J., concurring) (expanding *Rotkiske*'s holding outside the Fair Debt Collection Practices Act to conclude that the discovery rule also did not apply to accrual under the Copyright Act because the Supreme Court has "squelched" the "circuit evolution" of applying the discovery rule in decisions "spanning many federal statutes");

8

*Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1162 (6th Cir. 2021) (suggesting that the Sixth Circuit's "cases imbibing this 'bad wine' warrant reconsideration in light of the Supreme Court's recent teachings," but deciding it "need not resolve this tension now" with respect to plaintiff's Section 1983 claims because the claims were untimely under both the standard and discovery rules).

As discussed above, Title IX is a judicially implied right of action which itself does not set forth a statute of limitations, let alone, expressly incorporate the discovery rule. Thus, applying the discovery rule to Title IX claims requires a judicial implication (application of the discovery rule) upon another judicial implication (a private right of action). Pursuant to *Rotkiske*'s mandate, judges should avoid this. The discovery rule, therefore, does not apply to delay the accrual of John Doe 162's Title IX claim.

Consistent with *Rotkiske*, courts, including the Sixth Circuit, the Southern District of Ohio, and other district courts within the Sixth Circuit, have consistently held that a Title IX claim based on allegations of sexual assault, abuse, or harassment accrues at the time of the assault, abuse, or harassment itself. *See*, *e.g*., *Gilley v. Dunaway*, 572 F. App'x 303, 308 (6th Cir. 2014) (Title IX claim accrued at time student was sexually abused by her high school coach); *Giffin*, 1999 WL 238669 at *1 (Title IX claim accrued at time of sexual harassment); *Adams v. Ohio Univ*., 300 F. Supp. 3d 983, 991 (S.D. Ohio 2018) (Title IX claim accrued at the time of the sexual harassment) (citing *Klemencic v. Ohio State Univ*., 263 F.3d 504, 510 (6th Cir. 2001)); *Forrester v. Clarenceville Sch. Dist*., No. 20-12727, 2021 WL 1812700, at *5-6 (E.D. Mich. May 6, 2021) (Title IX claims accrued when the abuse occurred); *Bowling v. Holt Pub. Sch*., No. 1:16-CV-1322, 2017 WL 4512587, at *2 (W.D. Mich. May 26, 2017) (Title IX claim accrued on the date of the last sexual assault); *Anderson*, 616 F.Supp.2d at 668 (Title IX claim

accrued at the time of the alleged abusive acts by school employees); *cf. Guy v. Lexington-Fayette Urban Cty. Gov't*, 488 F. App'x 9, 15 (6th Cir. 2012) (holding that the discovery rule did not apply to a Section 1983 claim arising from sexual abuse; finding that such abuse is unlike other injuries (asbestos and medical malpractice) to which the discovery rule has been applied).[2]

John Doe 162 alleges that, during his visit to Ohio State, John Doe 162 "had an elbow injury and his elbow was in a sling." FAC (Doc. 28) at ¶ 77. Allegedly, "Strauss approached John Doe 162, asked about his elbow," and stated "he would examine Plaintiff's elbow." *Id*. Although John Doe 162's injury was to his elbow and Strauss told John Doe 162 he would examine the elbow, Strauss "took John Doe 162 into a side room, where he sexually assaulted/abused and digitally raped John Doe 162." *Id*. at ¶ 78. Specifically, Strauss "conduct[ed] a long, extensive genital exam where Strauss fondled John Doe 162's genitals and buttocks" and "inserted his finger into Plaintiff's anus and moved his finger inside Plaintiff for

---

[2] *See also King-White*, 803 F.3d at 762 (Title IX claim accrued when teacher abused student); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440-441 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014), *cert. denied*, 575 U.S. 935 (2015) (Title IX claim accrued at time of sexual abuse); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1216 (10th Cir. 2014) (comparing a Title IX claim based on sexual abuse to a battery, which "is complete upon physical contact, even though there is no observable damage at the point of contact," and holding plaintiff's Title IX claim accrued no later than the last date the plaintiff was sexually abused by her coach); *Doe v. Howe Military Sch.*, 227 F.3d 981, 989 (7th Cir. 2000) (Title IX claim accrued at time of abuse); *Johnson v. Gary E. Miller Canadian Cty. Children's Juvenile Justice Ctr.*, No. CIV-09-533-L, 2010 WL 152138, at *3 (W.D. Okla. Jan. 14, 2010) (plaintiff "impliedly concede[d]" that Title IX claim "had to have accrued" when the plaintiff was a student at the school because the alleged sexual abuse by the school employee only "occurred while she was a student at the school"); *Padula v. Morris*, No. 205-CV-00411-MCE-EFB, 2008 WL 1970331, at *4 (E.D. Cal. May 2, 2008) (Title IX claim "accrued on the last date Plaintiffs[] suffered an incident of sexual harassment"); *Monger v. Purdue Univ.*, 953 F. Supp. 260, 264 (S.D. Ind. 1997) (Title IX claim "accrued when [the student] knew or had reason to know of her injury—October 29, 1997[,]" the date her professor allegedly "sexually harassed her by touching her against her will on various parts of her body and indicating that he wanted to be with her privately"); *Clifford v. Regents of Univ. of California*, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *6 (E.D. Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014) (Title IX claim accrued when alleged sexual assault from hazing occurred); *Celece v. Dunn School*, No. CV2010139GWPVCX, 2020 WL 6802027, at *6 (C.D. Cal. Nov. 19, 2020) (finding that Title IX claim accrued at the time of the alleged abuse and recommending dismissal of Title IX claim that because it was "untimely by over twenty years"); *Gavin v. Bd. of Educ., S. Orange-Maplewood Sch. Dist.*, No. CV2009191KMJSA, 2021 WL 1050364, at *3 (D.N.J. Mar. 18, 2021) (Title IX claim time-barred where the "acts" alleged--sexual abuse, assault, and harassment—occurred six years before the filing of the complaint); *Franco v. Mesa Pub. Sch.*, No. CV-20-01129-PHX-DJH, 2020 WL 7388489, at *4 (D. Ariz. Dec. 16, 2020) (stating "the root of all Plaintiff's claims is clearly the sexual abuse she suffered as a minor" and "that harm ceased legally when she reached the age of majority, at which point she had two years to bring her federal claims"; dismissing Title IX claims brought five years after plaintiff graduated from high school as barred by the statute of limitations).

what felt like a prolonged time." *Id.* John Doe 162 felt "very confused and uncomfortable; his genitals were being sexually stimulated," and he "froze and felt uncomfortable." *Id.* at ¶¶ 78-79. The rectal exam was "rigorous, lengthy," and was "profoundly embarrassing and humiliating to the Plaintiff[.]" *Id.* at ¶ 12. According to John Doe 162, the above experience caused him to "suffer[] and continue[] to suffer emotional distress, physical manifestations of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life[.]" *Id.* at ¶ 176.

John Doe 162 also alleges that Strauss' conduct was so inappropriate that complaints about Strauss by students and athletes were widespread. *See id.* at ¶ 9 (alleging "repeated reports" by athletes and "other widely known information that indicated Strauss was a threat to his male patients"); *id.* ("A Graduate Assistant Trainer who overlapped with Strauss only one academic quarter noticed 'immediately' that something was 'off' with Strauss"); *id.* (alleging "numerous red flags" about Strauss, including that "athletes' openly commented on the fact that Strauss made them drop their pants regardless of their medical needs (e.g., to get a case of cauliflower ear treated")); ¶ 10 (alleging "clear signs of Strauss' predatory behavior"); ¶ 10 ("At least one team head coach requested that someone other than Strauss conduct the hernia checks for team physicals because his athletes complained so much about Strauss' methods"); ¶ 13 ("Some of the student-athletes reported Strauss' examination methods to team trainers"); ¶ 28 (alleging "rampant sexual harassment that student-athletes, particularly the wrestling team, had to endure"); ¶ 31 (alleging "continuous complaints and reports about Strauss' behavior"); ¶ 130 ("students and University staff reported and referred complaints about Strauss to various University employees"); ¶ 169 ("Throughout Strauss's 20-year tenure at OSU, students, student-athletes, and coaches conveyed complaints and concerns to OSU administrators and employees

11

about Strauss's inappropriate sexual conduct."); ¶ 173(c), (e) (alleging "widespread knowledge and complaints about Strauss's abuse").

Based on the well-established and consistent law discussed above, John Doe 162's Title IX claim accrued between 1978 (at the earliest) and 1998 (at the latest). *See id*. at ¶¶ 82, 85. John Doe 162 did not, however, file suit until July 29, 2020. *See* Original Complaint (Doc. 1). Thus, John Doe 162's Title IX claim was filed approximately 20 to 40 years after the applicable two-year statute of limitations had expired. As a matter of law, John Doe 162's Title IX claim is time-barred and should be dismissed with prejudice.

## VI. THE DISCOVERY RULE DOES NOT APPLY TO DELAY THE ACCRUAL OF JOHN DOE 162's TITLE IX CLAIM.

John Doe 162 alleges that some plaintiffs "had difficulty realizing or reporting Strauss' conduct as sexually abusive" until 2019 (when Perkins Coie issued its report). FAC (Doc. 28) at ¶ 32-37, 124, 127-128; heading after ¶ 101.

As discussed above, however, the discovery rule does not apply. Even where plaintiffs have attempted to apply the discovery rule to Title IX claims, courts have consistently rejected it. The Supreme Court "ha[s] been at pains to explain that" the limitations period begins to run upon "discovery of the *injury*, not discovery of the other elements of a claim." *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (emphasis added); *see also Anderson*, 616 F. Supp. 2d at 668 (stating in a Title IX action, that "[i]n applying a discovery accrual rule ... discovery of the injury, not discovery of the other elements of the claim, is what starts the clock. Otherwise stated, a plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful") (quoting *Rotella*, 528 U.S. at 555 and *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001)); *Twersky v. Yeshiva Univ*., 993 F. Supp. 2d 429, 440 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) ("'[D]iscovery of the injury, not discovery of

12

the other elements of a claim, is what starts the clock,'" and this is true "regardless of how complex or difficult to discover the elements of the cause of action may be") (quoting *Rotella*, 528 U.S. at 555-556).

Moreover, under the discovery rule, the limitations period begins when a person "has *reason* to know of his injury"—even if he does not have actual or complete knowledge of his injury until later. *Anderson*, 616 F. Supp. 2d at 668 (quoting *Roberson*, 399 F.3d at 794). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Anderson*, 616 F. Supp. 2d at 668 (quoting *Roberson*, 399 F.3d at 794); *Bowling*, 2017 WL 4512587, at *1 (citing *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001)).

Importantly, accrual "is an objective inquiry[.]" *Helm v. Eells*, 642 F. App'x 558, 561 (6th Cir. 2016). That is, courts do not ask whether the particular plaintiff in fact *knew* about his injury, but rather, whether the "event" at issue—here, the complained of conduct by Strauss— "should have alerted the typical lay person to protect his or her rights." *Id*. "Any fact that should excite his suspicion is the same as actual knowledge of his entire claim. Indeed, 'the means of knowledge are the same thing in effect as knowledge itself.'" *Dayco Corp. v. Goodyear Tire & Rubber Co*., 523 F.2d 389, 394 (6th Cir. 1975) (quoting *Wood*, 101 U.S. at 143). "[T]he plaintiff bears the burden of 'plead[ing] circumstances which would indicate why the [cause of action] was not discovered earlier[.]'" *Owner Operator Indep. Drivers Ass'n,* 540 F. Supp. 2d at 929 (quoting *Auslender v. Energy Mgmt. Corp*., 832 F.2d 354, 356 (6th Cir. 1987)). As the Supreme Court has stated, a plaintiff not certain whether conduct by a government physician constitutes a tort "can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims

13

against the Government." *United States v. Kubrick*, 444 U.S. 111, 123 (1979).

Here, John Doe 162's assertion that he did not recognize Strauss' conduct constituted sexual abuse, assault, or harassment is implausible given the specificity of his allegations regarding the abuse and harm he suffered, as set forth above. *See Doe v. Pasadena Hosp. Assn., Ltd.*, 2020 WL 1529313, *5 (C.D. Cal. Mar. 31, 2020) ("[T]he Court need not blindly accept Plaintiff's allegation that she only became aware of" sexual abuse by her gynecologist when a newspaper published a report about the physician's misconduct "because the factual allegations directly contradict such an assertion."). Related to this, as discussed previously, John Doe 162 alleges Strauss' conduct was so inappropriate that complaints about Strauss by students and athletes were widespread.

At the very least, the alleged conduct would have caused John Doe 162 to be ***suspicious*** of a ***possible injury*** at the time the sexual abuse occurred, thereby triggering the accrual of his Title IX claim. *Helm*, 642 F. App'x at 561; *Dayco Corp.*, 523 F.2d at 394. Specifically, John Doe 162 alleges that he felt "very confused and uncomfortable; his genitals were being sexually stimulated"; he "froze and felt uncomfortable"; and his experience with Strauss was "profoundly embarrassing and humiliating." FAC (Doc. 28) at ¶¶ 12, 78-79. He also alleges that Strauss "conduct[ed] a long, extensive genital exam where Strauss fondled John Doe 162's genitals and buttocks" and "inserted his finger into Plaintiff's anus and moved his finger inside Plaintiff for what felt like a prolonged time," digitally raping him, even though John Doe 162 presented with an elbow injury and Strauss expressly told John Doe 162 "he would examine Plaintiff's elbow." *Id.* at ¶¶ 78-79.

This Court can reasonably infer that John Doe 162's suspicion of a possible injury would have only increased in the intervening years, when he presumably obtained medical treatment

14

that did not involve a physician engaging in the type of conduct toward him that Strauss did. *See Doe v. Univ. of S. Cal.*, 2019 WL 4228371, at *3 (C.D. Cal. Apr. 18, 2019) ("Plaintiff's argument that she could not have discovered Dr. Tyndall's examination constituted sexual misconduct until 2018 is implausible, since Plaintiff undoubtedly had further gynecological examinations by other medical professionals after Dr. Tyndall over the 27 years since and would have had a basis to conclude that Dr. Tyndall's conduct fell outside of medically acceptable standards.").

Courts have consistently rejected efforts by plaintiffs to delay the accrual of their Title IX claims based on the discovery rule. *See*, *e.g.*, *Gilley*, 572 F. App'x at 308 ("Even if this Court accepted as true that [plaintiff] was completely unaware both that she was being sexually abused and that the Board knew of that sexual abuse," plaintiff was "aware of facts that should have aroused her suspicion of the claims against the defendants at the time of her injuries" and did not "exercise[] reasonable care and diligence to discover whether she had a viable legal claim" in waiting almost seven years after she turned 18 years old to sue); *Anderson*, 616 F.Supp.2d at 671 ("Plaintiffs were sufficiently aware of facts that should have aroused their suspicion of the claims against Defendants at the time of their injuries . . . There is no indication that Plaintiffs exercised any diligence, ordinary or otherwise, to uncover the source of their injuries prior to the expiration of the statute of limitations for their claims, and the Board is entitled to be free of such stale claims") (citing *Kubrick*, 444 U.S. at 117); *Forrester*, 2021 WL 1812700, at *5 (Title IX claims accrued when the abuse occurred, not years later when plaintiffs "learned in August 2020 that Defendant Debandt abused many students and school administrators were notified of the abuse and failed to stop it"); *cf. Guy*, 488 F. App'x at 14-15 (Section 1983 claims arising from abuse at county summer program accrued when the abuse occurred, not when plaintiffs "discovered that

15

the defendants knew about and facilitated the abuse").[3]

Courts also have refused to find a delayed accrual of Title IX claims where, as here, the plaintiff was aware of the acts complained of, the abuser's identity, and that the abuser was an employee of the school. *See*, *e.g.*, *Anderson*, 616 F. Supp. 2d at 668, 671 (Title IX claims "accrued at the time of the alleged abusive acts" because plaintiffs "were no doubt aware of the underlying injuries of which they complain, the abuse at the hands of employees of the Board," and these "facts should have aroused their suspicion of the claims against Defendants at the time of their injuries"); *Forrester*, 2021 WL 1812700, at *6 (Title IX claims accrued at the time of the alleged abuse where "Plaintiffs do not contest that they knew or should have known Defendant Debandt was an employee of Defendant Clarenceville School District and that Defendants Shepich, Nelson, Kantor, Valentine, and Bergeron were Defendant Debandt's supervisors and had control over his conditions of employment."); *King-White*, 803 F.3d at 762 (Title IX claim accrued at time of abuse where student "was sadly quite aware of the abuse she suffered, and she was also aware that her abuser was her teacher"); *Twersky*, 579 F. App'x at 9-10 (Title IX claim accrued at time of abuse because plaintiffs' "unquestionabl[e] aware[ness] of (1) their injuries, (2) their abusers' identities, and (3) their abusers' prior and continued employment at [the high school] . . . was sufficient to put them on at least inquiry notice as to the school's awareness of

---

[3] *See also Twersky*, 993 F. Supp. 2d at 443-439 (Title IX claim accrued at the time high school students were abused, not two decades later when a newspaper article reported school administrator's admission that he and other administrators had been aware of the risk of sexual abuse when it was occurring); *King-White*, 803 F.3d at 762 (Title IX claim accrued when plaintiff was abused by teacher, not when plaintiff learned nearly two years later during the teacher's criminal case that school officials allegedly had ratified and acted with deliberate indifference to the abuse); *Varnell*, 2013 WL 12146483, at *6-*7 & n.4, *report and recommendation adopted*, No. 12-CV-905 JCH/GBW, 2013 WL 12149185 (D.N.M. June 24, 2013), *aff'd*, 756 F.3d 1208 (10th Cir. 2014) (Title IX claim accrued no later than the last date the plaintiff was sexually abused by her coach, not when the plaintiff "recently" learned of the superintendent's alleged concealment of the abuse, where plaintiff "was repulsed by the sexual conduct *when it was occurring*" and the school district could not now be liable because its "failure to prevent the abuse could only occur while the abuse was ongoing"); *Doe v. Univ. of S. California*, No. 218CV09530SVWGJS, 2019 WL 4229750, at *4 (C.D. Cal. July 9, 2019) (Title IX claim accrued at time of abuse by gynecologist, not decades letter when plaintiff read a newspaper article that "fully exposed" the "true extent" of the physician's abuse of other patients).

16

and indifference to the abusive conduct by its teachers"); *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 991 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015) ("Since by her eighteenth birthday A.W. knew that she had been injured by Feenstra and that Feenstra was employed by HISD, the discovery rule is not applicable because for limitations purposes, there was nothing left for A.W. to discover"); *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 296 (4th Cir. 2007) (plaintiff was required to bring her Title IX claim within "two years after she turned eighteen" where it was "beyond dispute that plaintiff knew she had been injured in 1984" and "knew the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty"—"her principal and her school board"—"by the time she reached majority").

Courts have likewise refused to apply the discovery rule to similar claims involving sexual abuse. *See*, *e.g.*, *Doe v. Pasadena Hosp. Ass'n, Ltd.*, 2020 WL 1529313, at *5 (finding plaintiff had "reason to suspect . . . wrongdoing, causation, and harm" at the time abusive gynecological examinations occurred"); *Doe v. USC*, 2019 WL 4228371, at *4 ("The fact that Plaintiff only learned [in 2018] that she was not the only female patient abused by Dr. Tyndall [during a gynecological exam] does not affect Plaintiff's knowledge of the abuse she received back in 1991"); *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, at *8 (D.D.C. 2019) (holding that the discovery rule did not delay accrual of a claim where a survivor of sexual abuse "recall[ed] that abuse but d[id] not appreciate its wrongfulness" at the time).

Virtually all of the above cases in which courts have considered (and rejected) the discovery rule as a basis to delay the accrual of Title IX claims pre-date the Supreme Court's decision in *Rotkiske* which, as discussed above, holds that the discovery rule does not apply to federal statutes (like Title IX) that do not expressly incorporate the discovery rule. *Rotkiske*, 140

17

S. Ct. at 360–61.

## VII. CONCLUSION.

For the reasons stated above, John Doe 162's First Amended Complaint (Doc. 28) should be dismissed with prejudice.

          Respectfully submitted,

          DAVID A. YOST
          ATTORNEY GENERAL OF OHIO

By:   /s/ Michael H. Carpenter
       Michael H. Carpenter (0015733) (Trial Attorney)
       Timothy R. Bricker (0061872)
       David J. Barthel (0079307)
       CARPENTER LIPPS AND LELAND LLP
       280 Plaza, Suite 1300
       280 North High Street
       Columbus, OH 43215
       E-mail: carpenter@carpenterlipps.com
              bricker@carpenterlipps.com
              barthel@carpenterlipps.com

       Special Counsel for Defendant
       The Ohio State University

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on June 28, 2021. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Trial Attorney for
Defendant The Ohio State University