**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN GARRETT, et al., | ) | |
| | ) | Case No. 2:18-cv-00692 |
| Plaintiffs, | ) | |
| | ) | Judge Michael H. Watson |
| v. | ) | |
| | ) | Chief Magistrate Judge Elizabeth P. |
| THE OHIO STATE UNIVERSITY, | ) | Deavers |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| STEVE SNYDER-HILL, et al., | ) | Case No. 2:18-cv-00736 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. |
| | ) | Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| NICHOLAS NUTTER, et al. | ) | Case No. 2:19-cv-02462 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. |
| | ) | Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| ROCKY RATLIFF, | ) | Case No. 2:19-cv-04746 |
| | ) | |
| Plaintiff, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. |
| | ) | Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| IN RE: SUBPOENA TO PERKINS COIE LLP, IN THE MATTER OF STEVE SNYDER-HILL, et al. v. THE OHIO STATE UNIVERSITY | ) ) ) ) ) ) ) ) | Case No. 2:19-mc-00038 <br><br> Judge Michael H. Watson <br><br> Chief Magistrate Judge Elizabeth P. Deavers |
| _____ | ) ) | |
| JOHN DOES 151-166, | ) ) | Case No. 2:20-cv-03817 |
| Plaintiffs, | ) ) | Judge Michael H. Watson |
| v. | ) ) | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| ALONZO SHAVERS, et al., | ) ) | Case No. 2:21-cv-02120 |
| Plaintiffs, | ) ) | Judge Michael H. Watson |
| v. | ) ) | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) ) | |
| JOHN DOES 172-191, AND JANE DOE 1, | ) ) | Case No. 2:21-cv-02121 |
| Plaintiffs, | ) ) | Judge Michael H. Watson |
| v. | ) ) | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

JOHN DOES 192-217,            )

                            )     Case No. 2:21-cv-02527

        Plaintiffs,        )

                            )     Judge Michael H. Watson

v.                         )

                            )     Chief Magistrate Judge Elizabeth P.

THE OHIO STATE UNIVERSITY,   )     Deavers

                            )

        Defendant.       )

_____ )

                            )

MICHAEL ALF, et al.,           )

                            )     Case No. 2:21-cv-02542

        Plaintiffs,        )

                            )     Judge Michael H. Watson

v.                         )

                            )     Chief Magistrate Judge Elizabeth P.

THE OHIO STATE UNIVERSITY,   )     Deavers

                            )

        Defendant.       )

_____ )

                            )

DR. MICHAEL B. CANALES, et al.,  )

                            )     Case No. 2:21-cv-02562

        Plaintiffs,        )

                            )     Judge Michael H. Watson

v.                         )

                            )     Chief Magistrate Judge Elizabeth P.

THE OHIO STATE UNIVERSITY,   )     Deavers

                            )

        Defendant.       )

_____ )

                            )

TIMOTHY MOXLEY, et al.,     )

                            )     Case No. 2:21-cv-03838

        Plaintiffs,        )

                            )     Judge Michael H. Watson

v.                         )

                            )     Chief Magistrate Judge Elizabeth P.

THE OHIO STATE UNIVERSITY,   )     Deavers

                            )

        Defendant.       )

_____ )

JOHN DOE,                                      )
                                               )    Case No. 2:21-cv-04254
              Plaintiff,                        )
                                               )    Judge Michael H. Watson
v.                                              )
                                               )    Chief Magistrate Judge Elizabeth P.
THE OHIO STATE UNIVERSITY,                      )    Deavers
                                               )
              Defendant.                         )
_____ )
                                               )
JOHN DOES 218-223,                              )
                                               )    Case No. 2:21-cv-04340
              Plaintiffs,                        )
                                               )    Judge Michael H. Watson
v.                                              )
                                               )    Chief Magistrate Judge Elizabeth P.
THE OHIO STATE UNIVERSITY,                      )    Deavers
                                               )
              Defendant.                         )
_____ )

## DEFENDANT THE OHIO STATE UNIVERSITY'S (1) POSITION STATEMENT REGARDING RECUSAL AND (2) RESPONSE IN OPPOSITION TO SHARP LAW'S MOTION FOR RECUSAL AND TO TRANSFER VENUE WITHIN THE DISTRICT

Defendant The Ohio State University submits this (1) position statement pursuant to the Court's September 10, 2021 instruction directing counsel to notify the Court whether the Honorable Presiding Judge should recuse himself from the above-captioned actions, and (2) response in opposition to Plaintiffs' Consolidated Motion for Recusal And To Transfer Venue Within The District Per 28 U.S.C. § 1404(b) filed by a group of attorneys led by Sharp Law, *pro hac vice* admitted counsel based in Kansas City representing plaintiffs in the *Garrett* and *Alf* cases (collectively, "Sharp Law"). *See Garrett*, Motion (Doc. 193).

Ohio State opposes the request to recuse or disqualify The Honorable Michael H. Watson. Ohio State further opposes Sharp Law's unwarranted attack on the impartiality of all the judges of the Eastern Division of this Court, and its transparent eleventh-hour attempt at

forum shopping.  Sharp Law chose to file its lawsuits here. Now, it apparently is second-guessing that strategy and seeking to attack Judge Watson and all the sitting judges of the Eastern Division to justify its about-face. That is improper.  Neither Judge Watson nor the Eastern Division should countenance such conduct.

As the Preamble to the Ohio Rules of Professional Conduct provides:

"Lawyers play a vital role in the preservation of society. . . . A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials. **Adjudicatory officials, not being wholly free to defend themselves, are entitled to receive the support of the bar against unjustified criticism**. **Although a lawyer, as a citizen, has a right to criticize such officials, the lawyer should do so with restraint and avoid intemperate statements that tend to lessen public confidence in the legal system. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.**"  Preamble at 5 (emphasis added).

## I.  **BACKGROUND.**

On September 15, 2021, Sharp Law filed a strategic motion seeking to disqualify The Honorable Michael H. Watson, and transfer venue of the case from this Court's Eastern Division in Columbus to the Court's Western Division in Cincinnati.  These  forum shopping efforts come:

(1)  More than three years after the first complaint in the above-captioned actions was filed on July 16, 2018, *in Columbus by Sharp Law*. *See Garrett*, Compl. (Doc. 1).

(2)  Nearly three years after the Honorable Presiding Judge disclosed to all counsel, including Sharp Law, at the first status conference that he has served as an adjunct professor at Ohio State's law school "at one time or another" and was "currently" teaching at Ohio State.  *See Garrett*, Jan. 17, 2019 Tr. (Doc. 52) at 3:23-25.  At that time, the Honorable Presiding Judge also advised: "I'm letting you know in case you want to raise something." *Id*. at 4:2-3. Counsel did nothing in response for nearly three years.

(3)  Nearly three years after the Honorable Presiding Judge ordered mediation to facilitate settlement, and approximately two years and six months after he referred these matters to Senior United States District Judge Michael R. Barrett for mediation.[1]

---

[1] *See Garrett*, Jan. 17, 2019 Order (Doc. 50); Garrett, Jan. 17, 2019 Hearing Tr. (Doc. 52) at 4:5-7; *Garrett*, Mar. 15, 2019 Order (69) at 2.

(4)  Just days prior to the Honorable Presiding Judge's anticipated ruling on Ohio State's pending motions to dismiss in the above-captioned actions.  The Honorable Presiding Judge had previously advised all counsel he would rule "no later than the end of September of 2021" and after the deadline to participate in the Strauss Individual Settlement Program expired on September 4, 2021.[2] Sharp Law's accusations that the Honorable Presiding Judge has delayed these matters is self-contradictory given that Sharp Law itself is seeking to delay a ruling on Ohio State's motions to dismiss on the eve of the ruling.

(5)  Despite the fact that, in January 2019, the Honorable Presiding Judge could have granted Ohio State's motions to dismiss plaintiffs' claims pursuant to clear-cut statute of limitations and other defenses as the briefing on Ohio State's motion to dismiss the First Amended Complaint in the *Garrett* case had been completed.  *See Garrett*, OSU Reply to MTD (Doc. 48).  The Honorable Presiding Judge instead ordered the parties to mediate because he wanted "to see that the right thing is done here." *See Garrett*, Jan. 17, 2019 Hr'g Tr. (Doc. 52) at 4:24. Counsel for certain plaintiffs at the time welcomed the mediation as "a major turning point" for the plaintiffs.[3] Sharp Law's motion confirms that "no good deed goes unpunished."

(6)  Despite numerous other rulings and statements by the Honorable Presiding Judge that have not only demonstrated impartiality, but have ***benefitted*** plaintiffs, as outlined herein.

Sharp Law's current attack on the Honorable Presiding Judge is merely a continuation of the scorched-earth campaign it has waged on every front throughout the three years these matters have been pending.  During this time, Sharp Law has:

(1)  Retained lobbyist Neil Clark to lobby the Ohio General Assembly for the passage of House Bill 249, which the Sharp Group itself has characterized as a "bill which proposed removing the statute of limitations for Strauss victims to pursue their civil claims against OSU"; legislation necessary to "give[] these victims their long-awaited day in court"; and legislation to "specifically lift the unfair statute of limitations[.]" *Garrett*, Cons. Compl. (Doc. 157) at ¶ 546-548.[4]  In other words, the *Garrett* complaint admits the claims are time-barred.

(2)  Along with Neil Clark and counsel for the *Snyder-Hill* plaintiffs, misrepresented the status of the mediation occurring before Mediator Judge Barrett to the Court, to Ohio lawmakers, and to the press in stating that "OSU has not participated in the mediation process in good faith"; "OSU will not take Plaintiffs' claims seriously until OSU's statute of limitations defense is defeated in a motion to dismiss"; mediation "hadn't resulted in a settlement"; and "OSU is whipsawing the Court, Legislature, and victims with the empty promise of 'doing the right thing' at mediation." *Snyder-Hill*, Feb. 24, 2020 Letter to Court

---

[2] *See Garrett*, Transcript (Doc. 179) at 3:21-22; *see also* https://straussindividualsettlementprogram.com/.
[3] https://www.nbcnews.com/news/us-news/mediation-eyed-accusers-lawsuits-about-ohio-state-doctor-n959976
[4] https://www.dispatch.com/news/20191107/lawsuit-ohio-states-handling-of-strauss-allegations-greatest-scandal-in-history-of-american-higher-education; https://www.dispatch.com/news/20190925/work-crawls-along-on-bill-allowing-strauss-victims-to-sue-ohio-state

(Doc. 113).[5] These statements were made despite the fact that the mediation resulted in settlements with 185 plaintiffs totaling $46.7 million.

(3) Engaged in a media publicity campaign, including creating a website asking the public to (i) stop all donations to Ohio State; and (ii) support letters to the Big Ten Conference and the NCAA requesting that they investigate and sanction Ohio State,[6] despite this Court's prior admonition that "I don't want this case tried in the media."[7]

Through it all, the Honorable Presiding Judge has served as a model of judicial temperament, compassion toward plaintiffs, patience, commitment to equal justice, and freedom from bias. While he could have granted Ohio State's motions to dismiss immediately, he instead referred the cases to Judge Barrett for mediation. As a result, **185 plaintiffs** represented by **10 plaintiffs' firms** reached settlements with Ohio State through the successful mediation.[8] Additionally, other plaintiffs have settled through the Strauss Individual Settlement Program.[9] At the time of settlement, the settling plaintiffs' counsel (who are not Sharp Law) stated in their court filing that "Ohio State had stepped forward and "done the right thing."[10]

Despite all of the above, and having taken advantage of Judge Watson's calm efforts to facilitate resolution prior to ruling on plaintiffs' time-barred claims, Sharp Law nevertheless now claims it is seeking the Honorable Presiding Judge's recusal and disqualification based on (1) his

---

[5] https://www.dispatch.com/news/20191107/lawsuit-ohio-states-handling-of-strauss-allegations-greatest-scandal-in-history-of-american-higher-education

[6] https://www.change.org/p/the-ohio-state-university-osu-alumni-to-stop-all-donations-till-there-is-justice-for-the-dr-strauss-survio; https://www.change.org/p/ncaa-request-ncaa-big-ten-conference-investigate-ohio-state-sexual-abuse-cover-up; https://osumetoo.com/osu-ncaa-big-ten-investigation/

[7] *See Garrett*, May 24, 2019 Hearing Transcript (Doc. 91) at 5:7-8. Despite the Court's admonition, plaintiffs' counsel continued their public, extra-judicial statements to the press. *See*, *e.g.*, https://www.dispatch.com/story/news/education/2020/10/14/strauss-accusers-call-ncaa-big-ten-investigate-ohio-state/3650036001/; https://www.youtube.com/watch?v=_4AeaxWspH4&feature=share&fbclid=IwAR2nCKI_GutvsAuTCT6OiWBqkwlNcKw1fs0HGWLdwcLY3-ggRPggPzG_Ta8; https://www.elevenwarriors.com/the-ohio-state-university/2020/10/117214/former-athletes-students-call-for-ncaa-big-ten-to-investigate-handling-of-sexual-abuse-accusations-against-richard-strauss

[8] *See DiSabato*, Case No. 2:19-cv-02237 (Docs. 39 & 40) (settling claims of 162 plaintiffs); *John Does 151-166*, Case No. 2:20-cv-03817 (Docs. 18 & 19) (settling claims of 23 plaintiffs).

[9] *See* https://straussindividualsettlementprogram.com/; *see also Nutter*, Case No. 2:19-cv-02462, Notice of Seven Pls' Intent to Settle and Notice of Thirty Nine Pls' Rejection of Defendant's Strauss Individual Settlement Program (Doc. 47).

[10] *DiSabato*, (Doc. 39) at ¶ 1; *John Does 151-166* (Doc. 18) at ¶ 1.

4

*previously* disclosed position as an adjunct professor at Ohio State and (2) his wife's arms-length business dealings with Ohio State that are completely *unrelated* to this litigation.

Regarding the Honorable Presiding Judge's service as an adjunct professor at Ohio State's law school, if there had ever been a basis for recusal or disqualification (which there was not), Sharp Law waived it long ago by failing to raise it. And no such basis ever existed to recuse the Honorable Presiding Judge for either teaching at Ohio State or because of his wife's business dealings with Ohio State. The true motive for seeking the Honorable Presiding Judge's recusal, of course, is conceded. As one plaintiffs' attorney has told the media, it is based on a "belief that this judge would throw out [their] cases[s]."[11] The Supreme Court has reminded, however, "the recusal statute was never intended to enable a discontented litigant to oust a judge because of adverse rulings," *Liteky v. U.S.*, 510 U.S. 540, 549 (1994), let alone predicted adverse rulings.

Sharp Law does not confine its attack to only the Honorable Presiding Judge. Rather, Sharp Law seeks to improperly disqualify *every* federal district judge in the Eastern Division of the Southern District of Ohio in Columbus by requesting a transfer of venue to the Western Division in Cincinnati. Enough is enough.

## II.   A JUDGE SHOULD NOT RECUSE HIMSELF WHERE, AS HERE, RECUSAL IS UNWARRANTED.

The Supreme Court and all United States Courts of Appeals, including the Sixth Circuit, have unanimously instructed that "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 354 (6th Cir. 2007) (quoting *Laird v. Tatum*, 409 U.S. 824, 837 (1972)). Indeed, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *Brautigam v. Damon*, No. 1:11-CV-551, 2013 WL 6387500, at

---

[11]   https://www.nbcnews.com/news/us-news/judge-presiding-over-ohio-state-sex-abuse-scandal-lawsuits-flagged-n1278935.

*4 (S.D. Ohio Dec. 6, 2013); *Easley v. Univ. of Michigan Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) ("[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is[,]"); *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir. 1988) (Easterbrook, J.) ("Judges have an obligation to litigants and their colleagues not to remove themselves needlessly . . . because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping.").

"A recusal motion is committed to the sound discretion of the district judge[.]" *In re M. Ibrahim Khan, P.S.C.*, 751 F.2d 162, 165 (6th Cir. 1984) [12] "The reasons for this are plain. The judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988). The judge whose partiality has been called into question "is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007).

Further, a judge considering whether to recuse himself "must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case. Litigants are entitled to an unbiased judge; not to a judge of their choosing." *In re Drexel*, 861 F.2d at 1312; *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) ("the disqualification decision must reflect *not only* the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons[.]").

---

[12] The denial of a motion to recuse is reviewed on appeal for an abuse of discretion. *See In re Nat'l Prescription Opiate Litig.*, No. 19-3935, 2019 WL 7482137, at *1 (6th Cir. Oct. 10, 2019). Under this standard, the Sixth Circuit "must uphold the district court's recusal decision unless [it has] a definite and firm conviction that the trial court committed a clear error of judgment." *Id.*

Accordingly, "the grounds asserted in a recusal motion must be scrutinized with care, and judges should not recuse themselves solely because a party claims an appearance of partiality." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001). Thus, the Honorable Presiding Judge is obligated to preside over this action unless recusal is required. As discussed below, no such grounds exist.

## III.   <u>SHARP LAW FAILS TO IDENTIFY A BASIS FOR RECUSAL</u>.

Recusal is governed by the Code of Conduct for United States Judges (the "Code") and disqualification is governed by 28 U.S.C. § 455, but the terms are used interchangeably. "The statutory obligation of a federal judge to recuse found in 28 U.S.C. § 455 is almost word-for-word identical, with merely editorial differences, to Canon 3C of the Code of Conduct for United States Judges." *Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1080 (6th Cir. 2015).

Pursuant to 28 U.S.C. § 455(a) and Canon 3(C)(1) of the Code, a federal judge must ***not*** recuse himself unless "his impartiality might reasonably be questioned." In addition, a judge must ***not*** recuse himself under 28 U.S.C. § 455(b)(4) and Canon 3(C)(1) of the Code unless the judge "knows that [he] . . .or [his] spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."

### A.   **Sharp Law Waived Any Objections To The Honorable Presiding Judge's** <u>**Service As An Adjunct Professor At Ohio State Under 28 U.S.C. § 455(a)**</u>.

Sharp Law waived any objection to the Honorable Presiding Judge's service as an adjunct professor at Ohio State under 28 U.S.C. § 455(a) because Sharp Law failed to promptly seek recusal in January 2019 (or at any time since then) when the Honorable Presiding Judge disclosed this relationship at the January 17, 2019 status conference.

If Sharp Law thought recusal were necessary, it was required to raise the issue sooner— much sooner. By waiting so long—two years and nearly eight months after the January 17, 2019

status conference—and by actively participating in the litigation and the successful settlement efforts, Sharp Law waived its right to seek disqualification under § 455(a) for the Honorable Presiding Judge's service as an adjunct professor at Ohio State.

A party waives its right to seek disqualification under 28 U.S.C. § 455(a) by failing to timely raise the issue after having knowledge of the pertinent facts. *See* 28 U.S.C. § 455(e) ("Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification."). This is the rule throughout the federal judiciary, including the Sixth Circuit. *See Goward v. U.S.*, 569 F. App'x 408, 410-411 (6th Cir. 2014) (disqualification under § 455(a) was waived because the party seeking disqualification failed to timely raise the issue after the evidence became a matter of public record.).[13]

The Southern District of Ohio has addressed waiver in the specific context of judges' service as adjunct professors at Ohio law schools. *See Meng Huang v. Ohio State Univ.*, No. 2:19-CV-1976, 2020 WL 8461547, at *1 (S.D. Ohio Oct. 26, 2020), *aff'd*, 2020 WL 8461560 (S.D. Ohio Nov. 4, 2020); *Valente v. Univ. of Dayton*, No. 3:08-CV-225, 2008 WL 11352577, at *6 (S.D. Ohio Nov. 26, 2008). In *Meng Huang* and *Valente*, this Court held that plaintiffs waived their right to seek the recusal of judges under Section 455(a) where the plaintiffs were aware of teaching activities at the defendant law schools but delayed in seeking recusal. *Id*.

The requirement that disqualification be timely sought is aimed at the very improper act

---

[13] *See also* Wright & Miller, *Waiver of Disqualification*, 13D Fed. Prac. & Proc. Juris. § 3552 (3d ed.) (citing *Goward* as exemplifying the waiver rule); *In re Triple S Restaurants, Inc.*, 131 F. App'x 486, 487 (6th Cir. 2005) ("[T]he defendants' motion to recuse was untimely and was therefore properly denied."); *McKibben v. Hamilton Cty.*, 215 F.3d 1327, at *6 (6th Cir. 2000) (finding recusal motion untimely where the party's "attorney knew of the basis for the recusal motion for almost 11 months" but "nevertheless proceeded with the case, filed an amended complaint, and waited until the defendants filed their summary judgment motion before moving for recusal"); *In re City of Detroit*, 828 F.2d 1160, 1167 (6th Cir. 1987) ("Both § 144 and § 455 require that disqualification motions be timely[.]"); *Scott v. Rubio*, 516 F. App'x 718, 723 (10th Cir. 2013) (holding that plaintiffs "did not timely seek recusal" where "[m]uch of the conduct of which they have complained throughout these proceedings occurred more than five months before they sought recusal.").

Sharp Law's motion commits. As the Second Circuit has explained:

> It is important to present recusal applications promptly for at least two reasons. First, a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take. Second, a prompt application avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters.

*United States v. Burke*, 756 F. App'x 93, 94 (2d Cir. 2019).[14]

The "purpose of the recusal statute is not to enable an unhappy litigant to judge-shop until he finds a judge" who "rules in his favor." *Twist v. U.S. Dept. of Justice*, 344 F. Supp. 2d 137, 142 (D.D.C. 2004), *aff'd*, 171 F. App'x 855 (D.C. Cir. 2005). This Court's decisions in *Meng Huang* and *Valente* are directly on point. Sharp Law waived its right to seek recusal based on the Honorable Presiding Judge's service as an adjunct professor at Ohio State's law school by failing to timely raise the issue after having full knowledge of that fact.

### B. Sharp Law Provides No Objective Basis To Question The Honorable Presiding Judge's Impartiality Under 28 U.S.C. § 455(a) And Canon 3(C)(1).

Sharp Law's motion also fails on its substantive merits. The motion does not argue that the Honorable Presiding Judge actually harbors bias or prejudice. Nor could it, as there is no evidence to support such an allegation. Judge Watson has bent over backwards to be fair and respectful to plaintiffs and their counsel. Sharp Law instead relies on a supposed "appearance of impropriety." *Garrett*, Motion (Doc. 193) at 15.

Disqualification under § 455(a), however, is "not based on the subjective view of a party." *Burley v. Gagacki*, 834 F.3d 606, 615-16 (6th Cir. 2016). Rather, it "imposes an objective standard: a judge must disqualify himself where a reasonable person with knowledge of all the

---

[14] *See also In re Kensington Intern. Ltd.*, 368 F.3d 289, 294 (3d Cir. 2004) (noting that the "evil that a timeliness requirement is intended to prevent" is "holding in reserve a recusal demand until such time that a party perceives a strategic advantage."); *Bosley v. 21 WFMJ Television, Inc.*, 245 F. App'x 445, 455 (6th Cir. 2007) ("Timeliness is a factor that obviously merits consideration by a court that is trying to determine whether a judge is truly biased or a litigant is merely trying to avoid an . . . adverse decision."); *United States v. York*, 888 F.2d 1050, 1055 (5th Cir. 1989) ("A timeliness requirement forces the parties to raise the disqualification issue at a reasonable time in the litigation. It prohibits knowing concealment of an ethical issue for strategic purposes.").

facts would conclude that the judge's impartiality might reasonably be questioned." *Id*. at 616. The burden is on the moving party to justify disqualification. *Id*. Indeed, "a judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise….The burden is not on the judge to prove that he is impartial." *Scott v. Metro. Health Corp*., 234 F. App'x 341, 352 (6th Cir. 2007). Sharp Law's motion fails to meet this burden.

1. **The Honorable Presiding Judge's Rulings Demonstrated Impartiality And Often <u>Benefitted Plaintiffs.</u>**

Rather than being biased or prejudiced against Sharp Law and its clients, the Honorable Presiding Judge has entered rulings that have not only demonstrated impartiality, but often *benefitted* plaintiffs, as set out below:

    a. **The Honorable Presiding Judge made statements supportive of the plaintiffs.**
        i. *See Garrett*, Jan. 17, 2019 Hearing Transcript (Doc. 52) at 4:23-24, 5:13-16 ("[T]he Court intends to see that the right thing is done here.").
        ii. *See Garrett*, Sept. 9, 2021 Hearing Transcript (Doc. 191) at 9:1-3 ("The plaintiffs in this case have unquestionably been abused and taken advantage of by Dr. Strauss.")

    b. **Without objection from Sharp Law, the Honorable Presiding Judge delayed ruling on Ohio State's motions to dismiss and ordered the cases to mediation, which was successful in allowing 185 plaintiffs to achieve settlements totaling $46.7 million despite their time-barred claims.**
        i. *See Garrett*, Jan. 17, 2019 Hearing Transcript (Doc. 52) at 4:4-5 (stating, without objection from Sharp Law, "[t]he Court does not intend to rule anytime soon on [Ohio State's] motions to stay discovery or the motions to dismiss.").
        ii. *See Garrett*, Jan. 17, 2019 Hearing Transcript (Doc. 52) at 4:4-5 (stating "[t]he Court intends that we will mediate these cases," without objection from Sharp Law).
        iii. *See Garrett*, Jan. 17, 2019 Order (Doc. 50) (stating, without objection from Sharp Law, that Ohio State's motions to dismiss would be "held in abeyance pending mediation").
        iv. *See Garrett*, Mar. 15, 2019 Order (Doc. 69) (referring the cases to Senior United States District Judge Michael R. Barrett for mediation, without objection from Sharp Law).
        v. *See Garrett*, May 24, 2019 Order (Doc. 90) ("encourag[ing] the parties to focus their efforts on mediation," without objection from Sharp Law).
        vi. *See Garrett*, Aug. 23, 2019 Order (Doc. 108) (terminating Ohio State's

motions to dismiss "as moot . . . in order to facilitate settlement," without objection from Sharp Law; directing Ohio State to "ask the Court to reactive the motions to dismiss, if necessary, at the conclusion of mediation," without objection from Sharp Law).

vii. *See Garrett*, May 13, 2021 Hearing Transcript (Doc. 179) at 3:17, 24-25, 4:10 (stating the Strauss Individual Settlement Program was "a good thing"; "it's been my goal from the outset to try to resolve as many of these claims as possible through settlement"; and "I encourage settlement early and often, folks," without objection from Sharp Law).

**c. The Honorable Presiding Judge allowed certain discovery requested by plaintiffs to facilitate plaintiffs' settlement negotiations.**

i. *See Garrett*, May 24, 2019 Order (Doc. 90) (permitting discovery that facilitated the mediation).

ii. *See Garrett*, Aug. 23, 2019 Order (Doc. 108) (granting plaintiffs' motion to subpoena and depose certain witnesses).

iii. *See Garrett*, May 24, 2019, June 14, 2019, and Dec. 20, 2019 Orders (Docs. 90, 94, 132) (ordering Ohio State to provide plaintiffs' counsel with the unredacted version of the Perkins Coie Report containing confidential information sourced from State Medical Board files for use during the mediation).

**d. The Honorable Presiding Judge granted, over Ohio State's opposition, various motions filed by plaintiffs.**

i. *See Garrett*, Aug. 23, 2019 Order (Doc. 108) (granting, over Ohio State's opposition, plaintiffs' motion to subpoena and depose certain witnesses).

ii. *See Garrett*, Apr. 17, 2020 Order (Doc. 151) (ordering the non-settling parties to proceed simultaneously with litigation and continued mediation as a result of the non-settling plaintiffs' request, stating, "[u]ntil recently, however, the Court had not received word from the mediator that the situation warranted parallel mediation and litigation efforts.").

iii. *See Garrett*, May 20, 2020 Order (Doc. 156) (granting, over Ohio State's opposition, plaintiffs' motion to use non-cooperating witness deposition testimony obtained during the mediation for the litigation).

**e. The Honorable Presiding Judge denied various motions filed by Ohio State.**

i. *See Garrett*, May 16, 2019 Order (Doc. 89) (denying Ohio State's motion for an order "permitting Ohio State to publicly release portions of an independent investigation report [the Perkins Coie Report] which discuss [confidential] information retrieved from files obtained from the State Medical Board of Ohio").

ii. *See Garrett*, May 24, 2019 Order (Doc. 90) (denying Ohio State's motions to stay discovery).
*See Garrett*, Aug. 23, 2019 Order (Doc. 108) (denying Ohio State's request for a status conference).

iii. *See Garrett*, May 20, 2021 Order (Doc. 156) (denying Ohio State's request for

a renewed stay of litigation).

**f. The Honorable Presiding Judge assigned mediation- and discovery-related matters to other judicial officers. Sharp Law's motion complains about mediation and discovery matters that were being handled by *other* judges, not by the Honorable Presiding Judge.**

   i. *See Garrett*, Aug. 23, 2019 Order (Doc. 108) at 2 (ordering the parties to mediate discovery disputes with the Court-appointed mediator, Senior United States District Judge Michael R. Barrett, and direct such disputes to the presiding magistrate judge, Chief Magistrate Judge Elizabeth Preston Deavers, if the parties could not reach agreement).

   ii. *See Garrett*, Dec. 20, 2019 Order (Doc. 132) at 2 ("discourag[ing]" the filing of motions unnecessary to the furtherance of mediation unless and until Judge Barrett informs the Undersigned that mediation has reached impasse. This approach will conserve the resources of the parties and the Court.").

   iii. *See Garrett*, Mar. 17, 2020 Order (Doc. 143) (ordering that "[a]ny concerns Plaintiffs may have with mediation or the mediation process shall be raised with Judge Barrett.").

Given that the Honorable Presiding Judge has acted wholly impartially throughout this litigation, Sharp Law's position that there is an appearance of impropriety is baseless. For the reasons below, the Honorable Presiding Judge's position as an adjunct professor at Ohio State's law school and his wife's unrelated, arms-length business dealings with Ohio State would not cause a reasonable person to question his impartiality.

**2. The Honorable Presiding Judge's Service As An Adjunct Professor At Ohio State Does Not Demonstrate An Appearance Of Bias Or Prejudice Against Plaintiffs.**

It should not be lost on the Court that Sharp Law's motion fails to disclose the previously discussed *Meng Huang* and *Valente* decisions by the Southern District of Ohio. In addition to finding that plaintiffs waived their right to seek the recusal or disqualification of judges who held positions as adjunct professors at the defendant universities' law schools, *Meng Huang* and *Valente* also held that such teaching activities would not cause a reasonable, objective person to question the judges' impartiality. *Meng Huang*, 2020 WL 8461560, at *2-4; *Valente*, 2008 WL 11352577, at *6. Specifically, the *Meng Huang* decision further held that:

12

- No statutory or judicial authority required the judge to even disclose her position as an adjunct professor;
- Disqualification was not appropriate because the judge had "devoted significant time" on the case and had acquired "valuable background experience concerning the parties' multiple discovery disputes"; and
- The *Guide to Judiciary Policy* provision cited in Sharp Law's motion (*see* page 11 at n.16) for the principle that a judge "should" recuse himself from cases in which the law school where he teaches is a party "does not totally restrict the judge's discretion in making a recusal determination," but allows "the weighing of several factors" to determine whether recusal is required. *Meng Huang*, 2020 WL 8461560, at *2-4.

Consistent with *Meng Huang* and *Valente*, the Sixth Circuit held that a judge was not required to disqualify herself from a lawsuit brought by a psychology professor who sued his university for employment discrimination after he was denied tenure. *Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077 (6th Cir. 2015). The professor lost on summary judgment and thereafter sought to disqualify the judge based on a previously undisclosed dating relationship between the judge and another faculty member within the same college of the university that included the psychology department. *Id.* at 1079. The Sixth Circuit held that the judge was not required to disclose the dating relationship; found that "[a] relationship with a tenured member of a university faculty, without more, would not necessarily cause a reasonable person to question a judge's impartiality regarding all matters involving the university"; and concluded there was no evidence that the judge's partner was involved with the professor's tenure review or had any interest in the outcome of the litigation. *Id.*

*Meng Huang*, *Valente*, and *Ragozzine* are consistent with decisions by other courts outside the Sixth Circuit and Southern District of Ohio interpreting similar facts.[15]

---

[15] *See, e.g.*, *Chalenor v. Univ. of N. Dakota*, 291 F.3d 1042, 1049-1050 (8th Cir. 2002) (in case involving male wrestlers suing their university for alleged Title IX violation arising from university's elimination of the men's wrestling program, holding judge who issued summary judgment in favor of university was not required to recuse where he "graduated from and is a [financial] contributor to the University"; finding plaintiffs' position to be "wholly without merit" and stating, "[w]e reject it emphatically"); *Lunde v. Helms*, 29 F.3d 367, 370–71 (8th Cir.1994) ("We do not think that the district judge's having graduated from the university law school, even though the university is a party defendant, without more, is a reasonable basis for questioning the judge's impartiality.... We do not think that making alumni contributions or participating in university educational programs, without more, is a

**3. The Honorable Presiding Judge's Spouse's Unrelated, Arms-Length Business Dealings With OSU Does Not Demonstrate An Appearance Of Bias or Prejudice Against Plaintiffs.**

"As a general proposition, the fact that the spouse or the spouse's business has a business relationship with an entity that appears in an unrelated proceeding before the judge usually does not require the judge's recusal." *Guide to Judiciary Policy*, Committee on Codes of Conduct Advisory Opinions § 220, No. 107. The Tenth Circuit has held that "financial contributions made by the district judge's spouse to TU, her alma mater," did not create an appearance of impropriety. *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228 (10th Cir. 2020). The district judge's spouse had purchased a life-insurance policy for $16,000. *Id*. at 1240. "Under the policy, TU would receive $100,000 upon her death to endow a scholarship for student athletes in her name." *Id.* The Tenth Circuit found that the district judge properly rejected the motion for recusal for three reasons:

(1) The judge or a family member did not have "a financial interest in the litigation. The contribution was not an investment. The contribution could imply bias only by showing enthusiasm for TU." *Id.*

(2) The spouse's contribution was "not specifically tied to activity related to the litigation. The contribution was for scholarships for student athletes." *Id*. at 1241.

(3) "[P]erhaps most importantly, the contribution was distinctly made by the judge's spouse, not the judge himself. The enthusiasm was that of the spouse and should not be attributed to the judge. In present-day society we do not treat a married couple as single-minded on public issues." *Id.*

As in *Barnett*, Sharp Law does not claim that the Honorable Presiding Judge or his spouse have "a financial interest in the litigation" itself. *Id*. at 1240. In addition, the business dealings between Ohio State and the Honorable Presiding Judge's spouse are "not specifically tied to activity related to the [Strauss] litigation." *Id*. The Strauss cases concern sexual abuse.

---

reasonable basis for questioning the judge's impartiality.") (citations omitted), *cert. denied*, 513 U.S. 1155 (1995); *Wu v. Thomas*, 996 F.2d 271, 272, 275 (11th Cir. 1993) (in retaliation claim brought by professors against university, finding the judge's "status as an [unsalaried] adjunct professor and his past contributions to the University" did not warrant recusal).

The Honorable Presiding Judge's spouse sells flags. And, "[p]erhaps most importantly," the business dealings are between the Honorable Presiding Judge's spouse and Ohio State, not between the Honorable Presiding Judge himself and Ohio State. *Id.* ("In present-day society we do not treat a married couple as single-minded on public issues."); *see also Perry v. Schwarzenegger*, 630 F.3d 909, 912 (9th Cir. 2011) (concluding that motion for recusal based on wife's opinions as executive director of the American Civil Liberties Union of Southern California is "based upon an outmoded conception of the relationship between spouses. ... Because my wife is an independent woman, I cannot accept Proponents' position that my impartiality might reasonably be questioned under § 455(a) because of her opinions or the views of the organization she heads.").

*Barnett* cites numerous other opinions which confirm that Sharp Law's motion lacks merit. *See Willner v. Univ. of Kan.*, 848 F.2d 1023, 1026, 1028 (10th Cir. 1988) (refusing to disqualify judge from hearing a case involving a university despite the judge being a ***director*** of that university's alumni association); *Roe v. St. Louis Univ.*, 746 F.3d 874, 886 (8th Cir. 2014) ("Alumni connections are not a reasonable basis for questioning a judge's impartiality, even if alumni contribute financially or participate in educational activities."); *Lunde v. Helms*, 29 F.3d 367, 371 (8th Cir. 1994) (the court stated it did "not think that making alumni contributions or participating in university educational programs, without more, is a reasonable basis for questioning the judge's impartiality.").

Contrary to its position, Sharp Law cites cases which either support that recusal is not appropriate here or are inapposite:

(1) In *Hall v. City of Williamsburg*, 768 F. App'x 366 (6th Cir. 2019) (cited on page 10 of Sharp Law's motion), the Sixth Circuit held that the district judge was not required to disclose the complained of relationships and "none of the three reasons cited by Hall show that the judge was required to recuse himself" based on the claimed appearance of

impropriety. *Id.* at 372.

(2)    In *Roberts v. Bailar*, 625 F.2d 125 (6th Cir. 1980) (cited on pages 10-11 of Sharp Law's motion), disqualification was required because the district judge "expressed his ardent sentiments about [the defendant's] character" in an employment discrimination case by stating: "I know [the defendant], and he is an honorable man and I know he would never intentionally discriminate against anybody." *Id.* at 127, 129-130.  In contrast to *Roberts*, the Honorable Presiding Judge here expressed support for the plaintiffs who are now seeking to disqualify him: "The plaintiffs in this case have unquestionably been abused and taken advantage of by Dr. Strauss." *See Garrett*, Sept. 9, 2021 Hearing Transcript (Doc. 191) at 9:1-3.

(3)    This Court itself distinguished *Crosby v. Univ. of Kentucky*, 863 F.3d 545 (6th Cir. 2017) and *Erlinder v. William Mitchell College of Law*, 0:14-CV-01477, ECF No. 3 (D. Minn. May 12, 2014) (cited on page 11, footnote 11 of Sharp Law's motion), in which judges recused themselves, stating in *Meng Huang* that *Crosby* and *Erlinder* do not "even state a basis for recusal, let alone establish a rule that adjunct teaching at a law school requires recusal from all cases involving the law school's university." *Meng Huang*, *2.

**C.    The Honorable Presiding Judge And His Spouse Do Not Have a Financial Interest In Ohio State That Could Be Substantially Affected By The Outcome Of These Proceedings Under 28 U.S.C. § 455(b)(4) And Canon 3(C)(1)(c).**

Sharp Law also seeks disqualification under 28 U.S.C. § 455(b)(4) and Canon 3(C)(1)(c) on the purported grounds that the Honorable Presiding Judge and his spouse have "a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding." Sharp Law appears to base its argument that § 455(b)(4) requires recusal solely on the business dealings between the Honorable Presiding Judge's wife's flag business and Ohio State, and not on the Honorable Presiding Judge's position as an adjunct professor at Ohio State.  *See Garrett*, Motion (Doc. 193) at 13.  "Financial interest" means, in relevant part, "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party[.]"  28 U.S.C. 455(d)(4); Canon 3(C)(3)(c).  Courts have interpreted "financial interest," however, to mean a direct interest, not a "remote, contingent, indirect or speculative interest[]." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 357 (6th Cir. 2007).

16

Sharp Law has not met its burden of establishing a financial interest requiring recusal for the same reasons discussed previously regarding why the business dealings between the Honorable Presiding Judge's spouse and Ohio State, and his service as an adjunct professor at Ohio State, do not establish grounds to conclude that the Honorable Presiding Judge's "impartiality might reasonably be questioned" under Section 455(a). In addition to those reasons, which are incorporated by reference herein, Ohio State notes the following:

In *Sullivan v. Chesapeake & Ohio Ry. Co.*, 947 F.2d 946 (6th Cir. 1991), the plaintiff sought to have the judge disqualified, arguing that the judge had a "financial interest" in the case because of her attorney spouse's "prior representation of [defendant] in other matters, her daughter's representation of [defendant] on at least one occasion, and her prior affiliation with her husband's [law] firm." *Id.* The Sixth Circuit explained plaintiff's burden of establishing a "financial interest" as follows:

> "To meet the burden of showing financial interest, a movant must do more than allege that law firms are interested in as many clients as they can get, that [the judge's husband's firm] would like to keep the defendant as a client, and that if the defendant loses this lawsuit, it will take its legal business elsewhere." *Id.* at *4 (citations omitted).

As in *Sullivan*, Sharp Law's motion merely asserts, in a conclusory manner, that the "financial interest" required for recusal exists here. It does not. There is no reasonable inference that Ohio State would take its "business elsewhere," rather than continuing to do business with the Honorable Presiding Judge's spouse's flag store if Ohio State were to lose these lawsuits. *Id.* Additionally, the flag business was founded decades before this litigation began by the Honorable Presiding Judge's spouse's mother; was purchased by his spouse in 2017; is just one of 400 businesses around the nation licensed to sell Ohio State merchandise and one of Ohio State's 34,000 vendors; and is required to pay a 12% royalty to Ohio State for each authorized

OSU-trademarked product that the business sells.[16]  There is no financial interest.

Sharp Law cites *Hall v. City of Williamsburg*, 768 F. App'x 366 (6th Cir. 2019) for the principle that judges must "take recusal action without regard to any appearance of impropriety if there is such 'financial interest'" as defined in § 455(b)(4).  *See* Motion at 10.  *Hall* does not assist Sharp Law's position, however, because the Sixth Circuit in *Hall* affirmed the district court's denial of the motion to recuse.  *Hall*, 768 F. App'x 366 at 373.  **The *Hall* Court also found that the judge was not even required to disclose that his family members worked at the defendant law firm "because there is no 'statutory or judicial authority requiring a judge' to explain to counsel family connections that would not result in recusal."** *Id.* at 372 (citing *Ragozzine*, 783 F.3d at 1080 (emphasis added).  As in *Hall*, the Honorable Presiding Judge here was not required to disclose his wife's flag store business.  Recusal is unwarranted.

## IV.  A TRANSFER OF VENUE IS NOT WARRANTED.

In furtherance of its judge-shopping mission, Sharp Law's motion next seeks transfer of these matters to Cincinnati pursuant to 28 U.S.C. 1404(a)-(b).  The motion, however, fails to satisfy any of the statutory requirements for transfer.  Transfer is only permitted "[f]or the convenience of parties and witnesses"; "in the interest of justice"; or where "all parties have consented."  28 U.S.C. § 1404(a).  The sole ground for transfer argued in Sharp Law's motion is that transfer is required "in the interest of justice, to preserve the integrity of the judiciary in the perspective of the public and the parties."  *See* Motion (Doc. 193) at 17. But, as previously discussed, there are no grounds for recusal or disqualification of the Honorable Presiding Judge, or for the wholesale recusal or disqualification of the entire Columbus federal bench.

---

[16]     https://www.dispatch.com/story/news/2021/09/13/federal-judge-gives-plaintiffs-option-recuse-him-strauss-cases/8316905002/;     https://www.dispatch.com/story/business/2021/01/12/flag-lady-store-passes-mother-daughter-expand-offerings/6638341002/

In fact, Sharp Law has it backward. The "interest of justice" requires that these cases *remain* in Columbus. It should not be lost on the Court that Sharp Law's attempt to dictate where these matters should be venued is wholly unsupportable because:

(1) Sharp Law admits it *chose* to file its lawsuits—in fact, the very *first* lawsuit in these matters (*Garrett*)—in the Eastern Division at Columbus. Sharp Law made a conscious decision to select Columbus as the venue for its cases. Sharp Law also knew when it filed suit that Ohio State's main campus is in Columbus and that Columbus judges and potential jury members may have connections to Ohio State—the largest land grant university in the world. Now, apparently second-guessing the decision to file suit in Columbus, it is not proper for Sharp Law to seek a change of venue by wrongly attacking the impartiality of every judge and potential jurors in the Eastern Division.

(2) The Court need look no further than Sharp Law's assertion that Columbus judge, The Honorable Sarah D. Morrison, cannot hear the case solely because she earned her undergraduate degree from Ohio State. *See* Motion (Doc. 193) at ¶ 33. This is not only without merit, but underscores the true forum shopping strategy at issue here.

(3) Sharp Law's forum-shopping motion goes on to broadly target all other Columbus judges (with the exception of The Honorable James L. Graham). Sharp Law claims they *all* are unacceptable because of their purported "connections" to Ohio State. *Id.* at ¶ 30. This type of forum shopping strategy implicates the cautionary language of the Ohio Rules of Professional Conduct Preamble that directs lawyers to "avoid intemperate statements that tend to lessen public confidence in the legal system."

## V.  RECUSAL OF THE HONORABLE PRESIDING JUDGE WOULD PREJUDICE OHIO STATE AND ALL OTHER PLAINTIFFS WHO DO NOT SEEK IT.

Sharp Law's attempt to forum shop further delays the resolution of these matters, causing continued prejudice to Ohio State and all other plaintiffs who do not seek recusal. In the underlying litigation, plaintiffs assert Title IX claims arising from alleged abuse by former Ohio State employee Richard Strauss that occurred between 1978 and 1998—**20 to 40 years before the filing of the first complaint.** Strauss died in 2005.

As thoroughly discussed in Ohio State's pending motions to dismiss and related briefing, Title IX claims are subject to Ohio's two-year personal injury statute of limitations. The Supreme Court has explained that a statute of limitations is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until

19

evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Am. Pipe v. Utah*, 414 U.S. 538, 554 (1974).

The underlying litigation is a textbook example of the Supreme Court's stated reasons for statutes of limitations. Strauss is dead. Plaintiffs' medical records for the time period at issue no longer exist. Prior to plaintiffs filing suit, witnesses had died or had become incapacitated, and/or their memories had faded over the years.

In addition to the length of time that has passed since the alleged abuse occurred, these matters also have been pending for more than three years—since July 16, 2018. *See* Garrett, Complaint (Doc. 1). While Ohio State has reconciled and settled with 185 plaintiffs who asked to do so in the mediation and many more through the Strauss Individual Settlement Program, Ohio State has the clear legal right to be free of the stale claims of the non-settling plaintiffs and have its motions ruled on by a Judge familiar with the case. The additional prejudice caused by Sharp Law's eleventh-hour motion is especially acute given the monumental amount of time and energy spent on this case over the past three years and two months, during which the parties, their counsel, the District Court mediator, and the Court itself have collectively devoted thousands of hours—all without any objection by Sharp Law.

## VI. <u>CONCLUSION.</u>

For the above reasons, the Court should not recuse itself and should deny the Sharp Law Plaintiffs' Consolidated Motion for Recusal And To Transfer Venue Within The District Per 28 U.S.C. § 1404(b). *See Garrett,* Motion (Doc. 193).

Respectfully submitted,

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By:   /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
Phone: (614) 365-4100
Fax: (614) 365-9145
E-mail: carpenter@carpenterlipps.com
bricker@carpenterlipps.com
barthel@carpenterlipps.com

Special Counsel for Defendant
The Ohio State University

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed electronically on September 19, 2021.  Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel.  The parties may access this filing through the Court's ECF system.


<u>/s/ Michael H. Carpenter</u>
Trial Attorney for
Defendant The Ohio State University